THE STATE OF TEXAS V. BEN H. PARRISH ET AL.

No. A-6791. Decided December 31, 1958.
Rehearing overruled February 18, 1959.
(320 S.W. 2d Series 330)

*Will Wilson*, Attorney General, *James H. Rogers*, Assistant Attorney General, and *Robert L. Burns*, of Houston, for petitioner.

*Henry H. Brooks* and *Gaynor Kendall*, both of Austin, for respondents.

MR. JUSTICE GRIFFIN delivered the opinion of the Court.

This is an eminent domain proceeding instituted in the County Court of Travis County by the State of Texas, petitioner here, to take by condemnation certain property in the City of Austin belonging to respondents. The right of the State to take the property subject to its obligation to pay damages for the taking was admitted and trial to a jury was therefore limited to the sole issue of damages. Upon the special issue verdict of the jury, the State was by final judgment of the County Court, awarded the land sought to be condemned; the respondents were adjudged to have and recover as their damages the sum of $33,000.00 which the jury found to be the cash market value of the lands on November 5, 1956. On appeal the Court of Civil Appeals sustained respondents', Parrish et al, assignments of error complaining of the action of the trial court in limiting respondents in their cross-examination of the petitioner's witness, Harold Legge, and reversed and remanded the cause. 310 S.W. 2d 709.

We hold that the Court of Civil Appeals erred in such action.

Respondents first placed upon the witness stand the owners of the tract of land, all of whom are respondents here, and one other witness. They, after duly qualifying, testified *seriatim* that the market value of the subject tract was $68,000 to $70,000; $60,000; $65,000 and $65,000.

Petitioners then introduced witness, Legge, who after setting out his qualifications, testified the property was worth $31,500.00. On direct examination, Legge described in detail his method of arriving at the market value of subject property. He also testified that he had secured data on all sales and resales of property since 1950 in an area bounded on the south by 11th Street, on the west by San Antonio Street, on the north by 19th Street and on the east by Trinity Street. Subject property is located in the block immediately adjacent to the Capitol and lying between Congress Avenue on the west and Brazos Street on the east, 13th Street on the south and 14th Street on the north. The "district" or "neighborhood" which Legge testified was best suited for comparing sales of property for the purpose of arriving at his evaluation of the market value was bounded on the south by 13th Street, on the north by 19th Street, on the east by San Jacinto Street and on the west by Lavaca Street. This area is four blocks east and west and six blocks north and south and includes the subject property. Legge testified that of a total of 200 and 300 sales of property on which he had secured information, he had used only 97 in arriving at the

market value to be placed on the subject property. He testified at great length giving his reasons for his opinion; why he thought some sales were of comparable property; that he had excluded from his consideration family sales, and sales of property not comparable to subject property. He had charts of sales, rentals, and other pertinent data which he exhibited to the court and jury to substantiate and explain his testimony. On cross-examination he was examined in great detail about each piece of property he had testified about and his method of arriving at the value of the property. He was asked hypothetical questions with regard to use of subject property as an office building; as to at least three sizes of office buildings; three rates of rentals per square foot; the capitalization of the rental return from each size and each rate of rental. These capitalization figures ranged from approximately $34,000 to about $59,500 for value of subject property. Under cross-examination he was asked about the sale price of four pieces of property located in the neighborhood of the Capitol. The values of these four pieces of property were shown to be $7.44, $8.33, $8.53 and $10.54 per sq. ft. as compared to a value of $3.45 per sq. ft. given by Legge to subject property.

In the course of the cross-examination he was asked if he had not used a figure of 5% annual increase of price in arriving at the market value he set on subject property. This was the first time this or any similar testimony had been given by Legge. He answered that this percentage increase was one of the many factors used by him in arriving at his opinion as to the market value of subject property. At this point respondents sought to elicit testimony from Legge that he had not considered the sales and resales of the Lowich property located diagonally across from the Travis County Courthouse at the northeast corner of the intersection of 11th and Guadalupe Streets. Legge testified that he had not considered the Lowich property and its various sales in arriving at the market value of subject property for the reason that he did not consider it comparable property, nor was it located in the "neighborhood" with subject property. From the aerial map introduced in evidence we can determine that the Lowich property is one block west from Lavaca Street on 11th Street. Thus it would be four blocks west and three blocks south of subject property and not within the "district" or "neighborhood," as defined by Legge. There was no testimony offered to show kind and character, use or similarity of the Lowich property to subject property. At this point petitioners lodged an objection to Legge's testimony. Respondents stated they were offering the testimony to test the validity of Legge's

use of a 5% annual increment in value. After a lengthy colloquy between counsel for all parties, the court, and occasionally the witness, the trial court sustained the objection and refused to permit respondents to further examine Legge regarding the Lowich property. The jury was then excused from the courtroom and respondents examined Legge at great length, not only about the Lowich property, its sales and resales, but also why Legge had not included it in his consideration in arriving at his opinion as to the market value of subject property. In addition, respondents asked Legge concerning five other tracts of land, two of which tracts were shown to be located between 11th and 19th Streets and San Jacinto and Lavaca Streets. The data concerning these two pieces of property was before the jury without objection.

We find that the cross-examination of Legge in the presence of the jury covers 103 pages of the Statement of Facts and continued over practically two full half days of the hearing.

Respondents assign error to the action of the trial court in not permitting them to ask witness, Legge, on cross-examination (1) if it were not a fact that the average increase in values on the sales and resales actually made in the area in question was 30% rather than 5%; and (2) if the average per annum increase shown by such sales and resales averaged 15% or 16%; and (3) if Legge, in another condemnation proceeding involving property in this area, had admitted that the 5% normal increase, if it were the sole factor considered, would not sustain the values testified to by Legge for the property sought to be condemned.

As to the increase in value exceeding 5% per annum, we find in the record interrogation of Legge regarding other specific tracts of land that his answers showed a much greater increase than 5% per annum. This testimony was given at great length on both cross and direct examination.

As to the last part of the error assigned, we find that Legge did, at another time, testify the 5% annual increase if used alone would not be a correct standard by which to measure values. His answers to questions by respondents regarding specific tracts of land show a much greater increase in value than 5% per annum. There was abundant testimony from other witnesses, both for respondents and petitioners, showing that the increase in value exceeded 5% per annum.

Following Legge on the stand were three witnesses for petitioner. After establishing their qualifications, they testified to a market value of subject property at $32,000, $35,000 and $30,500 respectively. On rebuttal respondents placed on the stand three witnesses who testified as to market value. Their testimony was $70,000, $65,000 and $60,000 respectively.

After a study of the record as a whole, we do not find it necessary to determine whether or not the trial court erred in its ruling on the cross-examination of Legge. Assuming for the purposes of this cause, that the action of the trial court in restricting the cross-examination of Legge was error, we fail to find that such action was such as was reasonably calculated to cause and probably did cause the rendition of an improper judgment. Rules 434 and 504, Vernon's Annotated Texas Rules of Civil Procedure. The reversal of the trial court's judgment is not justified unless an examination of the record as a whole leads to the conviction that the error was calculated to cause and probably did cause the jury to give the answer it did to all issues which will support the judgment. Cloud v. Zellers, 1958, 158 Texas 253, 309 S.W. 2d 806, 808. See also Condra Funeral Home v. Rollin, 1958, 158 Texas 478, 314 S.W. 2d 277, 280 (1) ; Mrs. Baird's Bread Company v. Hearn, 1957, 157 Texas 276, 300 S.W. 2d 646; City of Austin v. Cannizzo, 1954, 153 Texas 324, 267 S.W. 2d 808.

Respondents made no complaint in the Court of Civil Appeals, or in this Court, that there was no evidence to support the verdict of the jury. Neither did they complain that the verdict of the jury was against the great weight and preponderance of the evidence. A reading of the Statement of Facts shows there is ample evidence to justify the jury verdict.

Respondents have not shown that the errors of which they complained in the Court of Civil Appeals were reasonably calculated to cause and probably did cause the rendition of an improper judgment. Legge was not the only witness testifying to the market value of subject property. Much evidence was introduced from various witnesses of all parties as to sales and re-sales and percentages of increase in value. We can find nothing in this record to support the assumption that had respondents been permitted to introduce the evidence given by Legge for the purpose of their bill of exceptions, the jury would have arrivd at a different figure. The jury did not accept Legge's valuation on this property. They found between the valuation figures of $32,000, testified to by witness, Graham, and $33,500

testified to by witness Cochran. It was the jury's province so to find. It is a jury's right and duty to consider all the evidence and then determine which figure they will accept.

We agree with the holding of the Court of Civil Appeals that the other complaints of respondents are without merit.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.

Opinion delivered December 31, 1958.

Rehearing overruled February 18, 1959.