Margie Rea MARTIN et vir, Appellants,

v.

LIBERTY MUTUAL INSURANCE COMPANY, Appellee.

No. 7612.

Court of Civil Appeals of Texas.

Texarkana.

Feb. 23, 1965.

Rehearing Denied March 16, 1965.

Ralph R. Rash, Austin, for appellants.

Jack G. Neal, Sulphur Springs, for appellee.

FANNING, Justice.

The opinion of January 12, 1965, is withdrawn and the following opinion is rendered.

A workmen's compensation case. Margie Rea Martin joined by her husband sued appellee insurance company, seeking compensation for total and permanent disability by reason of back injuries on January 10, 1963, while employed by Pratt Packing Company in Hopkins County, Texas, and also seeking certain medical expenses.

Trial before a jury upon special issues resulted in a judgment for plaintiffs for total disability for 14 weeks, plus 10 weeks' partial disability, plus interest, and a part of the medical expenses sued for, to-wit, a $40.25 drug bill which had been stipulated. Plaintiffs' amended motion for new trial was overruled and they have appealed.

Appellants on appeal contend to the effect that there was "no evidence" and "insufficient evidence" to support the jury's findings with respect to plaintiff Margie Rea Martin's disabilities or any findings less than total and permanent disability, and take the position that the evidence conclusively shows that Mrs. Martin was totally and permanently disabled. Appellants also contend that such jury findings were so contrary to the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust.

For a comprehensive discussion of the law applicable to the determination of such character of points see Chief Justice Calvert's article " 'No Evidence' and 'Insufficient Evidence' Points of Error", 38 Tex. Law Rev., No. 4, p. 361.

It appears from the record that this cause was once tried in September, 1963, and was again tried in February, 1964. This appeal results from the last trial.

Mrs. Martin testified concerning her injuries and disabilities, contending that she injured her back while pulling a tub of water on or about January 10, 1963, during the course of her employment with her said employer.

If her testimony had been fully believed by the jury it would have authorized a verdict for total and permanent disability.

Plaintiffs offered the testimony of one doctor, Dr. DeCharles. He first saw Mrs. Martin on October 1, 1963. He next saw her on October 8, 1963, then October 22 or 23, 1963, December 5, 1963, and on December 10 and 11, 1963. From Dr. DeCharles' examinations, tests, x-rays and myleograms made of Mrs. Martin, he was of the opinion that Mrs. Martin had a ruptured disc and was totally and permanently disabled. If Dr. DeCharles' testimony had been fully believed by the jury it would have authorized a verdict for total and permanent disability.

Plaintiffs also offered certain hospital records with respect to Mrs. Martin, and also offered the testimony of a neighbor, a lay witness, whose testimony indicated that Mrs. Martin was suffering from disability.

■ Dr. Hanna, a witness called by defendant, testified that he first saw Mrs. Martin on January 18 or 19, 1963. He testified that on that date he examined Mrs. Martin and gave her various tests, which were negative in that they did not indicate Mrs. Martin had any damage to her lumbar nerves or any nerve damage, that he diagnosed her condition as a low back strain, that he gave her diathermy treatments in his office almost daily for sixty to eighty days. Dr. Hanna further testified that he hospitalized plaintiff from March 23, 1963, to April 8, 1963, in Sulphur Springs, Texas, where Mrs. Martin was placed in traction, and where he last examined her on March 29, 1963, and gave her various tests, and still found negative results as to anything that would indicate that Mrs. Martin had a ruptured disc or nerve damages. Dr. Hanna also testified as to x-rays made of Mrs. Martin's back and found nothing in the x-rays to indicate that Mrs. Martin had a ruptured disc. Dr. Hanna last saw Mrs. Martin on May 6, 1963, and it was his opinion that she was then still suffering from a low back strain, which in his opinion she would fully recover from in 90 days. He further testified that on May 6, 1963, the last time he saw Mrs. Martin, it was his opinion that she was suffering about a 30% disability, which would last about two or three months.

Dr. McConnell, a witness offered by defendant, testified he first examined Mrs. Martin on April 6, 1963, while she was in the hospital. He testified as to the various

tests he gave Mrs. Martin and he found nothing to indicate any nerve root damage, and it was his opinion that she presented the symptoms of a chronic low back strain, and he prescribed a back brace for her to wear. He later examined her on April 26, 1963, and it was his opinion then that she was still suffering from a low back strain. Based upon his examinations of April 6, and April 26, 1963, it was Dr. McConnell's opinion that she then had (on April 26, 1963), a disability of something under 50% which would last two or three months.

The testimony of Drs. Hanna and McConnell supports the verdict of the jury with respect to Mrs. Martin's disability and the duration thereof. The jury undoubtedly gave more credence and more weight to the testimony of Drs. Hanna and McConnell than to the testimony of Dr. DeCharles and Mrs. Martin.

We hold that there was evidence of probative force to support the jury's findings with respect to the extent and duration of plaintiff's disabilities (Issues 6, 7, 8, 9, 10, 11 and 16). Appellants' points 1 through 6, incl., and point 8 are overruled.

■ The burden of proof is on a compensation claimant to prove his case in all parts by a preponderance of the evidence. Traders' & General Insurance Company v. Stubbs, Tex.Civ.App., 91 S.W.2d 407, writ refused (1936).

■ In a jury case, it is the function of the jury to determine the credibility of the witnesses and the weight to be given their testimony, subject to proper judicial review.

There were some contradictions between the testimony of Mrs. Martin and Dr. Hanna. There were also some differences in Mrs. Martin's testimony in the first trial and in the second trial with respect to pains radiating down her legs. There were also some contradictions on a matter between Dr. DeCharles and Dr. Hodges with respect to whether Dr. DeCharles had talked to Dr. Hodges about Mrs. Martin's condition. Mrs. Martin was placed in a Sulphur Springs hospital in November, 1963, by Dr. Hodges, apparently upon the recommendation of Dr. DeCharles. Dr. Hodges was called as a witness by the defendant and the testimony elicited from him was mainly with reference to whether Dr. DeCharles had talked to him as testified to by Dr. DeCharles. Dr. Hodges was not asked by either party to express an opinion and did not express any opinion as to whether Mrs. Martin had a ruptured disc. On cross-examination Dr. Hodges testified to the effect that it was his feeling that Mrs. Martin had some nerve root irritation in November, 1963; however, on redirect examination he testified to the effect that this feeling was based on subjective complaints of Mrs. Martin and not upon anything he objectively found himself.

The record also indicates that Dr. Gafford (who had treated Mrs. Martin from May 7, 1963, to Sept. 14, 1963, and prior to her going to Dr. DeCharles) testified in the first trial, but did not testify in the second trial. (Mrs. Martin did not go to Dr. DeCharles until after the first trial). This circumstance was also before the jury for whatever weight, if any, it might be given by the jury.

We hold that the evidence is sufficient to support the jury's findings to special issues Nos. 6, 7, 8, 9, 10, 11 and 16. Also, after carefully considering the entire record in this cause in the light of the rules enunciated in the case of In re: King's Estate, 150 Tex. 662, 244 S.W.2d 660, it is our further view that the jury's findings to special issues 6, 7, 8, 9, 10, 11 and 16 are not so contrary to the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. Appellants' points 9 through 16, inclusive, are overruled.

■ Appellants also sought recovery of Dr. DeCharles' medical bill, the hospital bill at Tyler where Dr. DeCharles gave the

myleogram test to Mrs. Martin, and the bill of Hopkins County Memorial Hospital on the last admission on November 21st, 1963, and these bills were submitted in special issue No. 17 to the jury and the jury by its answer to special issue 17 awarded nothing to plaintiffs for these bills. These are the only bills in controversy here.

The jury having found that Mrs. Martin's total disability was fourteen weeks and her partial disability was ten weeks, evidently concluded that her disability had ended twenty-four weeks from January 10, 1963, and that Dr. DeCharles' bill, beginning with first treatment in October, 1963, and the later in time bill of the Tyler hospital, and the November, 1963, bill of Hopkins County Memorial Hospital, were unnecessary bills, as Mrs. Martin had already recovered, and that Dr. DeCharles' services, the myleogram and the following hospitalization periods were not needed. It was evidently the jury's view that Drs. Hanna and McConnell were correct in their diagnosis and estimate of Mrs. Martin's disability. Dr. Hanna testified that he did not think Mrs. Martin's injury was severe enough to justify a myleogram test. The fact that Dr. DeCharles gave Mrs. Martin a myleogram test does not compel the jury to find that it was necessary, as the jury undoubtedly discounted the testimony of Dr. DeCharles and gave greater credence and greater weight to the testimony of Drs. Hanna and McConnell.

We hold that there was evidence of probative force to support the jury's finding to special issue 17, that the evidence is sufficient to support same, and that such finding is not so contrary to the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. Appellants' points 8 and 16 are overruled.

Appellants by their 17th point contend that the trial court erred in refusing to permit the cross-examination of Dr. McConnell concerning his testimony for insurance companies in previous cases. Counsel for plaintiffs asked the following two questions on cross-examination of Dr. McConnell:

"Q. You examine patients for insurance companies quite often don't you doctor?

"Q. Do you testify for a lot of insurance companies, doctor?"

The trial court sustained objections to these questions and they were never answered and the matter was not pursued any further.

It is our view that the trial court erred in sustaining the objections to the two above quoted cross-examination questions. But was it reversible error under the record as a whole? (Rule 434, Texas Rules of Civil Procedure.)

To obtain a reversal of the judgment, appellant has the burden of showing that the action of the trial court in not permitting the witness to answer the two questions on cross-examination was (under the record as a whole) reasonably calculated to cause and probably did cause the rendition of an improper judgment. Rule 434, T.R.C.P.

The reversal of the trial court's judgment is not justified unless an examination of the record as a whole leads to the conviction that the error was calculated to cause and probably did cause the jury to give the answer it did to all issues which will support the judgment. See State v. Parrish, 159 Tex. 306, 320 S.W.2d 330 (1959) and authorities cited therein.

The Supreme Court of Texas in Parrish (supra) reversed the holding of the Court of Civil Appeals (310 S.W.2d 709) that the trial court reversibly erred in limiting the cross-examination of a witness, and the Supreme Court concluded that the error, if any, was not harmful and reversible under the whole record under Rule 434, T.R.C.P.

In Maddox v. Gulf, Colorado & Santa Fe Railway Co., Tex.Civ.App., 293 S.W. 2d 499, wr. ref., n. r. e. (1956), a condemnation case, it was held that upon an examination of the record as a whole, the action of the trial court in refusing to permit a landowner to cross-examine a railroad witness as to the fact that he had testified for the railroad in numerous other condemnation proceedings, was not shown to be reversible error under Rule 434, T.R. C.P. There was a strong dissent in the case, with the dissenting Justice strongly contending that Rules 434 and 503, T.R. C.P., were extending the doctrine of harmless error too far. The majority holding in the cause however was not disturbed by the Supreme Court, with the application for writ of error being refused with the notation, "No reversible error".

■ After carefully reviewing the record as a whole in this cause it is our best judgment that the action of the trial court in sustaining objections to the two cross-examination questions above related, while error, was not reasonably calculated to cause and probably did not cause the rendition of an improper judgment in this cause. Rule 434, T.R.C.P.; Maddox v. Gulf, Colorado & Santa Fe Railway Co., supra; State v. Parrish, supra. Also in this connection see the recent case of City of Dallas v. Holcomb, Tex.Civ.App., 381 S.W.2d 347 (1964), wr. ref., n. r. e. in 383 S.W.2d 585 (Tex.). Appellants' 17th point is deemed as not presenting reversible error under the record as a whole and is overruled.

■ Appellants by their 18th point contend that the trial court erred in refusing to grant plaintiffs' motion for new trial for the purpose of adducing newly discovered evidence. The alleged newly discovered evidence was that of Dr. Selman, who was present when Mrs. Martin had her myleogram test in Tyler and who made a fluoroscope test of the patient during that time, and Dr. Selman would have testified to the effect that in his opinion Mrs. Martin had a ruptured disc.

Appellee by its 17th counterpoint contends that the trial court did not err in refusing to grant plaintiffs' motion for new trial for the purpose of adducing newly discovered evidence because: "(1) that such evidence was known to exist during the trial and with diligence on part of appellants could have been introduced during the trial; (2) appellants and their counsel did know or should have known in the ordinary course of diligence that such evidence did exist; and (3) it was cumulative of that of another of appellants' doctor-witness and would not likely produce a different verdict if used at another trial."

On direct examination plaintiffs' witness Dr. DeCharles testified that at the time x-rays of Mrs. Martin were made at the Tyler Hospital, that three persons were present, himself, a *radiologist* and a technician. After this testimony was developed during the trial no attempt was then made to secure the testimony of the radiologist, and plaintiffs did not request a recess of the court to attempt to secure the testimony of the radiologist. Dr. Selman was the radiologist who was present; the deposition testimony of Dr. Selman is cumulative to that of Dr. DeCharles, as he is also of the opinion that Mrs. Martin had a ruptured disc.

After carefully reviewing the record we conclude that the trial judge did not abuse his discretion in overruling plaintiffs-appellants' motion for new trial on the ground of allegedly newly discovered evidence. In this connection see Amsterdam Casualty Company v. Jordan, Tex., 359 S.W.2d 864 (1962) and authorities cited therein. Appellants' 18th point is overruled.

The judgment of the trial court is affirmed.